Good morning, everyone. The first case this morning is number 09-1337 Tri-Star Electronics v. Preci-Dip. Mr. Landis. Thank you, Your Honor. May it please the Court. Your Honor, the ultimate issue in this case is Article III standing and whether Tri-Star, the plaintiff appellee here, had Article III standing to bring its lawsuit as the patentee against Preci-Dip. The standing issue centers on the initial assignment between the inventor and Tri-Star, the Ohio Corporation. The inventor explicitly assigned the patent to Tri-Star, Ohio. However, the Ohio Corporation... If we assume that reformation is available as a remedy, why is reformation not appropriate on the facts of this case? Your Honor, on the facts of this case, reformation would... Preci-Dip submits would result in nothing more than a retroactive cure of standing. Well, suppose we don't agree with that. What is it about the facts of this case that make reformation inappropriate? Well, Your Honor, I would say there are a couple points here. First, that in order to reform the assignment, there would have to be a mistake identified. I don't think in this case that a mistake was necessarily proven by the facts. What is that? And, well, the assignment itself, the language of the assignment, explicitly references Tri-Star as an Ohio Corporation. There was no evidence presented, at least with respect to whether that was a mistake or not. The real issue here is... Wasn't it undisputed that it was a mistake that they used, didn't correct the form when they made these various corporate changes? That may have been... I submit to Your Honor that may have been the case where Tri-Star may have characterized it as a mistake. I would submit to you that the evidence presented, the district court looked at quite impermissibly, in our opinion, the intent of the parties and concluded that it was clear that there was a mistake. Precedent would submit that it's not necessarily clear whether that evidence would support that the mistake was made. However, assuming... On the face of the document itself, why would anyone want to make an assignment to a non-existent corporation? Well, I would agree with you, Your Honor, that that would seem to be an absurd result. But, just from an evidentiary standpoint, I don't believe the evidence was sufficient to identify the mistake and to correct the mistake and look at the intent of the parties. I think the district court erred in looking at the intent of the parties because under contract law, in particular Ohio law, which the district court applied here, under the Ohio contract law, you do not look to the intent of the parties. You must first look at the document itself to determine whether there's an ambiguity on the face of the document. In a mistake case? I would submit to Your Honor, yes, if indeed a mistake was made. I thought the whole point of Reformation was to correct something which was not ambiguous and which was a clear mistake. Well, I would agree with you, Your Honor, that the district court first interpreted the contract and essentially rewrote the contract in its interpretation. But I would agree with you that if there was a mistake, then Reformation would be the proper course of action. However, in this case, the district court, I would submit, did not have subject matter jurisdiction to do so. And furthermore, that... Why not? Isn't that what courts are for, is to do the right thing? Your Honor, the Reformation issue is a matter of state law. And in this case, the plaintiffs pled a single question of patent infringement as original jurisdiction basis. I would submit to Your Honors that if original jurisdiction is called into question based on the standing issue, the court should not go further and exercise its supplemental jurisdiction in order to reform the assignment, particularly to cure standing in the very case where the standing is questioned. Suppose that the corporation to which the assignment was attempted to be made had gone from being a privately held corporation to being a public corporation at some time shortly before the assignment was made. But the document still said, to the Jones Company, a privately held corporation. Would that, in your view, invalidate the conveyance to the public corporation that Jones became? Yes, Your Honor. I would submit that that would as well. And suppose that Jones was misspelled, J-O-N-A-S, instead of J-O-N-E-S. But it was quite clear from the document what corporation was intended. Would that also, in your view, invalidate the transaction? Not necessarily, Your Honor. And the difference in the facts that you presented are that within the four corners of the document, you suggested that there was some evidence that... No, it's context. The question really is how much you can look at context. This is the old latent ambiguity versus patent ambiguity issue. And the rule, typically, as I'm sure you know, is that when you're looking for a latent ambiguity, you can examine not just the document, but the objective circumstances, the context in which the contract was executed. And that may turn up a latent ambiguity that simply looking at the four corners of the document wouldn't reveal. The famous peerless case that we all studied in law school, the raffles against Wiggles House, is the classic case where the contract said, this will be shipped on the ship peerless. And it turns out there were two peerlesses. Well, it didn't appear from the face of the document. Therefore, it didn't look ambiguous. But sure enough, context displayed something else. And, Your Honor, I would submit in the peerless case, if I recall the facts of that case correctly, there was submitted evidence of a mutual mistake. Well, yeah. I mean, it ended up being decided as a mistake type case. But the problem was that what the court had to struggle with, of course, was the question of whether they could look beyond the four corners of the contract. And the answer was yes. In certain circumstances, I would agree with you, Your Honor, that you could look beyond. And why isn't this one of those circumstances in which one can see that there's a change in circumstances such that there's an explanation for why the appositive and Ohio Corporation might have appeared in the document, just as there would be an explanation for, a privately held corporation. Well, I would submit to Your Honor that in this particular case, we have to follow the contract law interpretation principles. And the plaintiff here is not without recourse. TriStar could have sought reformation of the assignment if, in fact, it thought the mistake was made, which it did not. You know, I thought your position was not what you just said, but that in this particular case, you don't follow the rules of contract law. You can't correct for mutual mistake. You don't apply the Ohio law about successors and assigns. You don't allow reformation of contract under the usual rules of contract law because it's a question of Article III standing. I had thought that that was really your position, or perhaps the only conceivable position. Yes, Your Honor. That's precisely our point, is that in the context of this case, you cannot reform the contract in order to cure standing. And that's the real question, is why not? What is there about Article III standing that causes one to discard all of the rules of several millennia about reformation of contracts and interpretation and application in accordance with mutual intent? Well, I would submit to Your Honor that because there was a question as to whether Tristar was the patentee under the patent statutes in order to confer Article III standing, that that initial interpretation should be made by any court as to whether they actually had standing to bring their lawsuit. Your argument sounds as though it was like 150 years ago, where in order to get reformation, you had to bring a separate action. That's not the case anymore. In all the contract treaties that say you can get reformation within the context of a contract enforcement action, I don't see why a patent infringement suit should be any different. Well, I would agree with you, Your Honor, that reformation would be available to fix a mistake. And in this case, I would submit that outside the context of this lawsuit, it could be fixed by a reformation. Or, they could have executed a new assignment, but in neither case, it could not be used in order to retroactively cure standing. I would believe that that would cut against this court's precedent in ENZO. They did do a new assignment, but your point is it can't be retroactive, is that right? Correct, Your Honor. That would run afoul of the principles set forth by this court in ENZO, effectively being nothing more than a non-pro-tunk assignment. And I don't think this court limited the case of ENZO to just non-pro-tunk assignments, but essentially... But you don't have a non-pro-tunk unless you accept the premise that it was void and uncorrectable at the beginning. Correct, Your Honor. If there was a problem, if there was a mistake that needed, in order to get an ownership, in order to correct standing, that retroactive effect, essentially. We're submitting that the reformation would have that retroactive effect that is prohibited by ENZO and this court's precedent. Let's hear from the other side, unless you have more questions at the moment from Mr. Lentz. Let's hear from your opponent, and we'll save your rebuttal time. Thank you, Your Honor. Mr. Fersen. Good morning, Your Honors, and may it please the Court. I think that when you listen to my opponent's argument, and when you read their briefs, you have to accept one premise at the beginning, and that's that the parties intended a defective assignment. That Mr. Carrick, who worked for TriStar Electronics,  started in 1994, and then after December 31st, 1997, when it was a California corporation, intended not to assign it to his then-employer, the California Corporation, but intended to assign it to the Ohio Corporation, the prior iteration. Yes, but you had a sympathetic judgment. Why really should one be entitled to correct a mistake that should have been obvious at the time, and was not corrected for years? Well, I think going back to the Nicholson case, the Supreme Court decided, which said that a patent assignment, like any other contract, can be reformed or reflect the intentions of the parties. Here, there was a mistake. I don't think that there can be any question about that. You look at the evidence that was put in, TriStar, we put in an assignment that was executed back in 1996 before. Okay, but why should that correction be retroactive? I don't believe, that's not what the court said, that he was creating a pro-tunk retroactive assignment. What he said is the original assignment was valid, and he recognized that in that assignment, the intentions of the parties was for Mr. Carrick to assign his invention to his employer, TriStar Electronics, and regrettably, that assignment said that they were still an Ohio corporation, but Precedent wants you to, they say that they want you to just focus on the four corners of the document, but in actuality, they just want you to focus on one word within the four corners of that document, and that's the Ohio corporation, rather than the California corporation. That's quite a critical word, is it not? I still go back to my question, why should this correction be retroactive? I'm not sure I understand your question, Your Honor, so I apologize. If it's not retroactive to the date of the mistake, then there's no standing for this case. Well, I believe because I don't think that the district court's ruling was clearly erroneous, because he found several reasons for why the party's intentions were to create an assignment from TriStar, the California corporation, or to TriStar, the California corporation, from Mr. Carrick. I gather you don't want to answer the question. I'm not sure, and I apologize, I'm not sure I understand your question, Your Honor. Do you agree that unless the correction is retroactive to the date of the assignment rather than to when the correction was made, that there was a flaw, as to how fatal the flaw is another question, but a serious flaw in the document on which standing was based? I believe there was a flaw in the document. I think that a retroactive only comes into play in the Protunk assignments that were referred to, the cases including Enzo, referred to by opposing counsel, where in those cases what happened wasn't that the district court found that an assignment that was originally executed was invalid. What they found was, or what the courts allowed, the district courts in those cases allowed, was an assignment that occurred after the fact of the filing of the lawsuit. Here, they found that the September, the court found that the September 7, 1999 assignment was valid. So the non-Protunk assignment cases should not apply. Was a valid assignment to a non-existent corporation? No, it was a valid assignment to the California corporation, is what the district court found. If corrected? If corrected. That's absolutely, Your Honor. Well, what do you think is the stronger of the, well, I guess there were three grounds, but do you think this is, in your view, properly viewed as a contract construction or a contract reformation case, principally? I think our stronger argument is contract reformation, Your Honor. I think when you look at the facts that they relied on, that Mr. Carrick was an employee of the TriStar California corporation at the time that the September, 1999 assignment was made, when they looked at the fact that within the four corners of that document, it referenced the El Segundo California address. So when you look at the other words in there, that's why I said that they really want to focus only on one word when they want to talk about the four corners. They don't want you to look at the fact that the place of business stayed the same. They don't want to look at the fact that Mr. Carrick worked for TriStar both before and after. Well, what about the extent to which one is permitted to look at the context within which the contract was executed? Do you subscribe to the view that the construction of the contract, if there's no patent ambiguity on the face of the contract is confined to the four corners of the contract, assuming that reading the contract by its terms would not reveal any ambiguity? I believe that yes, where and I think that's the law, where there's, where the four corners, where there can be no ambiguity from the four corners that you have to look only at the four corners. So you would reject the line of cases that says that notwithstanding clarity, apparent clarity from the four corners that you can look outside of the document to objective extrinsic evidence, not of the party's own making, but extrinsic evidence of the circumstances in which the document was executed for indicia of latent ambiguity. I think that you have to look outside the four corners here because otherwise the assignment would be, as counsel said, it would result in an absurdity. An Ohio corporation didn't exist at the time of the assignment. So, let me make sure I understand. I thought you had just a moment ago said you thought that you had to confine yourself to the four corners of the document but now you're saying no, you can look outside the context and so forth. I apologize if I misspoke. I may have misunderstood you. No, I think that where there can be no lack of clarity from where you're looking at four corners of a document and there's no lack of clarity, there's nothing that would create an absurd result from those four corners. I think that you are confined to the four corners, but where So you were saying Really, I mean, you to take the peerless case again, if there's nothing in the four corners of the document that indicates there's another peerless ship which, oddly enough, is in the same port, you couldn't look at that in your view. That would be something that neither the court nor anyone else could look at if the four corners were clear enough. No, I don't think that that was my position, your honor, and I apologize. I'm a little unclear as to then exactly when you think one can look outside of the four corners of the document for potential latent ambiguity. I think you can look outside the four corners of the document when the document otherwise wouldn't make sense when it's confined within its own four corners. I'm having trouble. I don't understand how this document is ambiguous. It says Ohio. You can look outside the four corners of the document to show that that's a mistake and have a reformation. I'm having a little difficulty seeing how you could say that the document itself on the face of it is ambiguous. This is not a situation where there's a reference to peerless where you might have two ships with the same name. It's very specific. It says TriStar and Ohio Corporation. Well, I think that this is similar to peerless insofar as you have two ships with the same address. No, no, but the assignment says TriStar and Ohio Corporation, so it's very specific in identifying it. Right. It was specific in its identification, but it's just a clear mistake. Yeah, but that's why you have reformation. Right. I mean, it seems to me what we're discussing is when you use an interpretation to arrive at the result and where you use a reformation. I'm having difficulty seeing how you can interpret this document on the face of it to say something other than what it says. I do see how you can reform it to say that it means something different. Sure, and I believe that the way the district court reached that result was they looked at the language that whereby Mr. Carrick transferred and assigned the patent to TriStar and its successors and assigned. And I think that that's important, because when you look at patents and you look at inventions, the time of the assignment, the time of the patent application necessarily follows from the time when the invention was conceived, tested, and then you try to assign the patent, and then you try to apply for a patent here. And so, the language in patent assignments, I think, is broad, and what that successor language, opposing counsel would have you believe that... That's a different point, but stick with this one for a moment. I thought a moment ago you said that Nicholson case said you could reform a patent assignment. I don't see that that language is quoted in your brief. Did you misspeak when you spoke about Nicholson? No, I don't believe I did, Your Honor. I believe Nicholson said that a patent can be reformed. Did you quote language to that effect in the brief? Because I don't see it. I believe I did, Your Honor. I believe it was on page 20 of my brief. Actually, Nicholson cited on E.P. It's a typo in your table of contents. I'm embarrassed about that, Your Honor. And I apologize. Yes, but I did quote to Nicholson. But it doesn't refer to reformation, right? Assignment of an interest in an invention secured by letters patent is to be construed to carry out the intention of the parties. You're right, Your Honor. It talks about the intention of the parties. Successive cases talk about how any contract can be reformed to reflect the intention of the parties. But a reformation isn't a nunk-or-tunk act. It's saying that the original assignment is effective, but it's just going to be construed or reformed to say something else. That's correct, Your Honor. The district court thought to avoid all of this debate by the point that you started to touch on. By saying that the contract itself says two successors in the signs. And your opponent says that this isn't the traditional reading of what's meant by the assignment to a corporation and its successors in the signs when the succession takes place before the contract is signed. Right. So what's your response to that argument? I think there's a couple of responses to that argument. The first would be that the language quoted here is missing one specific word that was in the cases that they cited, which was that those were specific assignment provisions whereby they talked about that the assignment would be binding upon successive parties. We don't have that word binding here in this assignment. And as I was saying earlier, the successor language I think here, does it have the assignment language in there to where it's obvious that all of the rights are being transferred from Mr. Carrick to TriStar and therefore this assignment would also be assignable? Yes, I think that's in there. But I think also when you look at the timeline of patents, inventions, and patent assignments, the reason why that language in there was to be absolutely clear who Mr. Carrick was transferring this assignment, this invention to. And he was transferring it to TriStar and its successors and assigns. And at the time of the assignment, September 1999, could he be sure? And also there was also an assignment back in June 1998 also. And then based on the communications with the patent office, they had to execute another assignment based on exactly how they were narrowing the patent. But the successor's language does make it absolutely clear who Mr. Carrick intended to assign this to. And it was to TriStar, his employer. And if the patent was issued a year down the road and TriStar had some sort of change in their corporation or was absorbed by another corporation or some other change in the corporate structure, it would be assigned to that entity too. That's what that language was intended to mean. I don't think anyone, even your appointment, disputes what the clear intention was. Whether you call this a mistake or whatever it was. But what about the argument that since we're talking about Article 3 standing schools out, you can't fix it? I don't think that that's what your line of cases, and you would know this better than I would obviously, I'm not sure that's what they say. I don't think that's what they say. I think that what the Enzo case and the other cases that followed Enzo said was that you're not allowed to create standing after the fact. But that's not what the district court did here. Granted, we did execute a confirmatory assignment in hopes that perhaps that might remedy it also. But that's not the grounds for the district court's decision. The grounds was that the original assignment was valid. And he held that for two reasons in addition to the reformation, which is the successors and assigns language created a valid assignment and also that Ohio merger law has exceptions whereby property of a company can be extended to a successor corporation after the fact. And that was the other grounds of his decision. And those exceptions weren't addressed by opposing counsel in their brief or in argument today. Any more questions, Mr. Chris? Thank you, Your Honor. Mr. Lenz? Briefly, just a few points here. First, with respect to the evidence of intent, if we truly were going to reach the reformation issue and look to the intent of the parties, I would submit that the evidence that is relied upon does not rise to the level of clear and convincing in order to prove the intent of the parties. I believe that some of the evidence that was relied upon... Why does it have to be clear and convincing? I believe that the standard for a reformation of a contract, at least with respect to how the district court applied it, that the evidence to show the intent of the parties would have to rise to a clear and convincing standard. Under state law. Under state law, correct. The evidence submitted and relied upon by the district court included a statement from one of the business principals of TriStar. It was attesting to prove the evidence of intent of the inventor. I would submit that that is here saying that it is not necessarily probative of the issue of intent. But there wasn't any evidence of contrary intent by any of the parties to the intent of the parties. I'm sorry? I misunderstood. You were criticizing the executive of the corporation. Correct. But there wasn't any contrary evidence. In terms of what's clear and convincing, if there's only evidence on one side, how can it not be clear and convincing? I would also submit to Your Honor that with respect to any evidence to the contrary, we did not even reach the discovery stage. There was no discovery taken. Did you ask for discovery on this question? Frankly, Your Honor, we didn't because we didn't have time. The actual issue came up post-briefing. The district court asked for supplemental briefing on the narrow issue regarding the Ohio law and interpretation of whether a merged entity could take property. I thought you were, in your opening argument, you were agreeing this was an obvious mistake. Well, Your Honor, I think that the proper way, not necessarily to answer your question, the proper way to approach this is to if a mistake is in fact there, you need to prove up that mistake. And I believe that under certain circumstances that there evidence could be presented to prove up a mistake. Having said that, the only way to correct that mistake would be through reformation. Well, maybe so, but isn't I know you argue that reformation is not available or that it can't be used in an Article III context. Put that aside, I thought you were agreeing that if this were a reformation case, that there was a clear mistake here. No? Well, I don't think that, I mean, I can give you my own sense in how the evidence was presented. I don't think there was enough evidence presented to prove that was a mistake. We don't have frankly, the inventor's side of things. We have a declaration from the inventor's attorney, in fact, that speaks to his intent, but we really don't have a prove up of an actual mistake. I would submit that once a mistake could be proven, then yes, reformation would be the avenue to take but not putting aside the standard issue. Okay, I think we're running short of time. Any more questions? I think we have the issues. Thank you, Mr. Landers and Mr. Gleason.